HOMER SEWELL *et al.*

*v.*

CHICAGO TERMINAL TRANSFER RAILROAD COMPANY.

*Opinion filed December 21, 1898.*

EMINENT DOMAIN—*witnesses need not be experts to testify as to damages to land taken for railroad purposes.* Upon the condemnation of a right of way through a farm, witnesses who are familiar with the value of land in that locality and with the general management and use of farms, and who are acquainted with the effects of railroads upon such property, may give their opinions as to the extent of damage to land not actually taken.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

F. M. LOWES, for appellants.

KEMPER K. KNAPP, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This appeal was taken from a judgment condemning as a right of way, on appellee's petition, a strip of land sixty-six feet wide, running diagonally across a tract of land of appellants containing 119 acres, situated about one mile north-west of the limits of the city of Chicago. Appellants claim damages also to the land not taken. The jury found the value of the land taken was $425 per acre, and also awarded appellants $850 as damages to the land not taken.

Numerous errors have been assigned, but they all relate to the alleged inadequacy of the amount allowed as damages to the land not taken. The whole tract was nearly square in form, and appellee's road would so divide it as to leave on one side, in the south-east corner, upwards of nineteen acres, and on the other the rest of the tract not taken for the right of way. The value testified to by the witnesses ranged from $300 to $500 per acre, and according to the finding of the jury the whole tract was worth upwards of $50,000. There was testimony tending to prove that the land was valuable for purposes of subdivision, and witnesses for appellants, held by the court qualified to testify, fixed the damages to the land not taken at $8000 and upwards. Appellee produced evidence tending to prove that the construction and operation of its road,—which was to be a belt line around Chicago, connecting with all roads entering that city, and to be used for transporting freight only,—would cause manufactories to be built along its line and upon or near appellants' land, and that the tract would be benefited more than it would be damaged. We shall not enter upon a discussion here of appellee's evidence on this branch of the case, except to say that it assumed a wide latitude and approached near to a character that was purely speculative. But we are of the opinion that the court applied a rule too restrictive to appellants in

the examination of their witnesses, and the judgment must be reversed for that reason.

After appellee had produced its evidence to prove that the land not taken would not be damaged but would be benefited by the road, appellee called, among others, George Goodyear, who testified that he resided at Dunning, which, as we understand, is in the neighborhood of the property in question; that he was acquainted with the property, owned land adjoining it and was acquainted with its value and the values of land in that vicinity; that its value was $500 per acre, and that he was "acquainted with the effects of railroads on property." Appellants then asked the witness this question: "Can you state whether, in your opinion, the operation of this railroad through that land would be a benefit to it?" The court refused to permit the witness to answer, and appellants offered to prove by the witness that the railroad would greatly damage the land—would depreciate its value to the extent of $5000. The court erred in refusing to allow the witness to answer the question and to be examined on the subject inquired about. The full extent of his information and the value and weight of his testimony could have been elicited on cross-examination. If none but experts could testify upon such subjects, the owners of land condemned for railroad purposes would have very inadequate protection of their property rights. Substantially the same question has been decided by the court in *Chicago, Peoria and St. Louis Railway Co.* v. *Nix,* 137 Ill. 141, and other cases. In the *Nix case* we said: "The question called for the opinion of the witnesses as to the value of the land not taken, as affected by the construction and operation of the railway. It is not the rule that on the question of the value of property no witnesses can be examined but those engaged in buying and selling the species of property under investigation, but, on the contrary, any person knowing the property and its value may testify, the weight to be given to their testimony

being left to the jury. (*White* v. *Hermann,* 51 Ill. 243; *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413.) The precise question arising here was decided in *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 Ill. 290, where it was held that, on an assessment of damages under a proceeding by a railroad company to condemn a right of way through a farm, it is competent for witnesses who are acquainted with the farm and familiar with the use and productions of such property, and its value, to give their opinions as to the extent of damage which the construction of the road over the same will occasion, leaving it to the jury to give their evidence such weight as in their opinion it may deserve." *Metropolitan Elevated Railroad Co.* v. *Dickinson,* 161 Ill. 22.

These views apply also to the witness Hatch, offered by appellants, and whose testimony was refused by the court. A witness for appellee (its general agent, who did not appear to know the value of the land in controversy nor the uses to which it was adapted or for which it was most valuable,) had testified, against appellants' objection, from his knowledge of the effect of the road on lands at Harvey (a place twenty-six miles away) and from his experience in railroad business, and in view of his "experience in the location of industries and the serving of industries by the road," that the road would be a great benefit to that part of this tract not taken, and that he had found that there had been an increase in value of property wherever this road had run.

It is apparent from the record that appellants were placed at a disadvantage by the rulings of the court, and from the amount of damages allowed for cutting into irregular fragments this valuable tract of land it cannot be said that appellants were not prejudiced.

For the error mentioned the judgment is reversed and the cause remanded.                    *Reversed and remanded.*